■ DANIELA MAÑAS, Respondent, v VMS ASSOCIATES, LLC, Doing Business as VIOLY & COMPANY, et al., Appellants. [863 NYS2d 4]—

Order, Supreme Court, New York County (Doris Ling-Cohan, J.), entered April 5, 2007, which, insofar as appealed from, denied those portions of defendants' motion seeking dismissal of the second, sixth and seventh causes of action, unanimously reversed, on the law, without costs, those portions of the motion granted and the second, sixth and seventh causes of action dismissed.

Plaintiff was hired as an analyst by an investment banking firm, Violy, Byorum & Partners Holdings (VBP), operated by defendant Violy McCausland-Seve. VBP, however, experienced financial losses and began winding down its affairs in 2003. Around the time VBP began winding down its affairs, McCausland-Seve opened a new investment firm, defendant Violy & Co. (Violy), and offered a position in this new firm to plaintiff.

According to the allegations in her complaint, plaintiff, while interested in the new position, was concerned about the compensation she would receive if she accepted the position; in 2002 and 2003 her salary at VBP was cut and she did not receive a year-end bonus in either of those years. Moreover, McCausland-Seve had promised creditors of VBP that 20% of certain fees generated by Violy would be used to pay off VBP's debt. Thus, plaintiff "demanded assurances from [McCausland-Seve] that [plaintiff] would receive adequate compensation for past and future services. [Plaintiff] also demanded assurances from [McCausland-Seve] that Violy would not suffer the same

financial mismanagement as VBP." Plaintiff asserted that Mc-Causland-Seve "made the following representations and promises to [plaintiff] regarding compensation and management at [Violy]":

"(a) The Short-Term Compensation Plan: At first, [plaintiff] would earn the same base salary earned at the time VBP closed its doors (which reflected pay cuts). She would also not receive bonuses in connection with the closing of a few small, initial deals that were carried over from VBP. Proceeds from those deals would be used to start-up Violy . . . and pay off past liabilities. After that initial period, [McCausland-Seve] would then compensate [plaintiff] for her financial losses and her ongoing performance in executing deals by, at a minimum, restoring her salary to the highest point at VBP and paying her bonuses *at the time certain deals closed in amounts unprecedented by past VBP standards.*

"(b) The Long-Term Compensation Plan: After the short-term compensation plan expired, [plaintiff] would be paid bonuses for closing deals on a semi-annual basis.

"(c) Firm Management: Violy['s] . . . budget would be monitored and controlled to engender transparency and prevent the type of overspending and mismanagement that resulted in VBP's financial unsustainability and employees' lost earnings." Plaintiff claimed that she relied "upon these promises and terms" in accepting in October 2003 a position as a vice-president of Violy.

According to plaintiff, during Violy's first year of operation she requested that McCausland-Seve "crystalize specific numbers regarding [plaintiff's] short and long-term bonus compensation structures." In response to plaintiff's requests, McCausland-Seve allegedly told plaintiff that Violy was using money to pay off past debt and repay loans drawn on the firm's working capital line of credit. Thus, McCausland-Seve could not determine the amount or structure of plaintiff's bonuses.

In "mid-2004" McCausland-Seve appointed another vice-president, Fernanda, "to finalize [plaintiff's] bonus structures." "Fernanda compiled charts proposing specific numbers for the short and long-term compensation plans and frequently discussed the tenets of th[o]se plans with [plaintiff]." Each bonus under the short- and long-term compensation plans was based on different factors that Fernanda outlined to plaintiff; however, each bonus was based in some measure on "deals closed" on which plaintiff worked. "Fernanda represented that [McCausland-Seve] had approved" the information in the charts.

Violy "closed" entire deals and phases of other deals on which plaintiff worked, thereby generating fees that were to be distributed to plaintiff as bonuses under either the short- or long-term compensation plans. Yet, despite numerous requests by plaintiff to McCausland-Seve that she clarify Violy's bonus policies and pay plaintiff bonuses on deals on which plaintiff worked that had been entirely or partially closed, plaintiff received only one bonus under the short-term compensation plan. In addition to alleging that McCausland-Seve "placated [plaintiff] with assurances that her concerns [regarding bonus payments] would be addressed or claimed that [Violy] lacked sufficient funds to pay bonuses," plaintiff claimed that McCausland-Seve squandered Violy's income by taking personal cash advances, purchasing an expensive personal automobile and funding projects unrelated to Violy. Ultimately, plaintiff's employment with Violy was terminated in April 2006.

Plaintiff commenced this action against Violy and McCausland-Seve, asserting seven causes of action. Defendants jointly moved under CPLR 3211 (a) (7) to dismiss all of the causes of action except the first, which is for breach of contract, i.e., Violy's failure to pay plaintiff salary and bonuses in accordance with the short- and long-term compensation plans. Supreme Court granted the motion to the extent of dismissing the cause of action for promissory estoppel and plaintiff's claim for punitive damages, and plaintiff does not challenge those determinations. And defendants, for their part, do not seek review of the court's denial of those portions of the motion seeking dismissal of the causes of action for unjust enrichment and quantum meruit. Thus, this appeal is limited to whether Supreme Court correctly denied those portions of the motion seeking dismissal of the causes of action for fraudulent inducement, fraud and defamation.

A fraud-based cause of action is duplicative of a breach of contract claim "when the only fraud alleged is that the defendant was not sincere when it promised to perform under the contract" (*First Bank of Ams. v Motor Car Funding*, 257 AD2d 287, 291 [1999]). A fraud-based cause of action may lie, however, where the plaintiff pleads a breach of a duty separate from a breach of the contract (*id.*). Thus, where the plaintiff pleads that it was induced to enter into a contract based on the defendant's promise to perform and that the defendant, at the time it made the promise, had a "preconceived and undisclosed intention of not performing" the contract, such a promise constitutes a representation of present fact collateral to the terms of the contract and is actionable in fraud (*Deerfield Communica-*

*tions Corp. v Chesebrough-Ponds, Inc.*, 68 NY2d 954, 956 [1986] [internal quotation marks omitted]; *see First Bank of Ams., supra*).

Here, plaintiff does allege with respect to the cause of action for fraudulent inducement that "[a]t the time [d]efendants made the [alleged] representations [regarding the short- and long-term compensation plans], [d]efendants did not intend to compensate [plaintiff] in conformity with their promises." Similarly, with respect to her cause of action for fraud, plaintiff alleges that "[d]efendants did not intend to compensate [plaintiff] in conformity with the[ ] promises and assurances [concerning the short- and long-term compensation plans]." However, these allegations are not sufficient. Rather, because they are merely "[g]eneral allegations that defendant[s] entered into a contract while lacking the intent to perform it[, the allegations] are insufficient to support [the fraud-based] claim[s]" (*New York Univ. v Continental Ins. Co.*, 87 NY2d 308, 318 [1995]). Thus, the causes of action for fraudulent inducement and fraud must be dismissed.

Additionally, the fraud-based causes of action must be dismissed for another, independent reason. Causes of action for breach of contract and fraud based on the breach of a duty separate from the breach of the contract are designed to provide remedies for different species of damages: the damages recoverable for a breach of contract are meant "to place the nonbreaching party in as good a position as it would have been had the contract been performed" (*Brushton-Moira Cent. School Dist. v Thomas Assoc.*, 91 NY2d 256, 261 [1998]); the damages recoverable for being fraudulently induced to enter a contract are meant to "indemni[f]y for the loss suffered through that inducement" (*Deerfield Communications Corp.*, 68 NY2d at 956 [internal quotation marks and brackets omitted]), e.g., damages for foregone opportunities (*see Coppola v Applied Elec. Corp.*, 288 AD2d 41, 42 [2001]). Here, plaintiff did not allege that she sustained any damages that would not be recoverable under her breach of contract cause of action; she seeks to recover salary and bonuses to which she claims she is entitled under the short- and long-term compensation plans. Thus, the fraud-based causes of action are duplicative of the breach of contract cause of action.

Regarding the cause of action for defamation, plaintiff did not plead in the complaint the specific words allegedly used by Mc-Causland-Seve, as required by CPLR 3016 (a), and has offered no excuse for her failure to do so. Instead, plaintiff appears to have paraphrased the allegedly defamatory statements. Thus,

"[s]ince the actual defamatory words were never pleaded with particularity, but were only paraphrased in a manner such that the actual words were not evident from the face of the complaint, the long-standing rule is that dismissal is required" (*Murganti v Weber*, 248 AD2d 208, 208-209 [1998] [citations omitted]; *see American Preferred Prescription v Health Mgt.*, 252 AD2d 414, 420 [1998]; *Gardner v Alexander Rent-A-Car*, 28 AD2d 667 [1967]). Concur—Tom, J.P., Saxe, Friedman, Gonzalez and Mc-Guire, JJ.