SUMMARY ORDER
Defendants-Appellants New Hampshire Insurance Company, American Home Assurance Company, and National Union Fire Insurance Company of Pittsburgh, Pennsylvania (collectively, “AIG”) appeal from a judgment entered in the Southern District of New York (Jed S. Rakoff, Judge) after a jury trial holding AIG liable for $34,373,170, including $5,750,000 in punitive damages, on claims of fraudulent inducement with respect to two reinsurance facilities, and from the denial of AIG’s post-trial motions for relief under Federal Rules of Civil Procedure 50(b) and 59(e).
AIG argues that (1) the claims brought by Plaintiff-Appellee AXA Versicherung AG (“AXA”) should have been arbitrated; (2) AXA’s claims should have been tried to the bench not the jury; (3) AXA’s claims are barred by the statute of limitations; and (4) punitive damages were improperly assessed and insufficiently supported. We assume the parties’ familiarity with the facts, procedural history, and scope of the issues presented on appeal. For the reasons that follow, we remand this case to the District Court for further proceedings consistent with this order.
With respect to the first issue on appeal, AIG contends that AXA’s claims should have been arbitrated because they sound in contract. In response, AXA, though not disputing that contract claims are subject to arbitration under the parties’ agreements, argues that its claims sound in fraud and thus were properly litigated in the District Court. AXA further argues that, in any event, AIG waived its right to arbitration.
New York law distinguishes between “a claim based on fraudulent inducement of a contract” and a breach of contract claim. Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 184 (2d Cir. 2007). Merely falsely indicating an intent to perform under a contract “is not sufficient to support a claim of fraud under New York law.” Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 19 (2d Cir.1996); see also Guilbert v. Gardner, 480 F.3d 140, 148 (2d Cir.2007) (misrepresentations that pension plan was “ ‘taken care of when, in fact, defendants knew this to be false” were merely duplica-tive of contract claim); TVT Records v. Island Def Jam Music Group, 412 F.3d 82, 90 (2d Cir.2005) (“[Ujnder New York law, the failure to disclose an intention to breach is not actionable as a fraudulent concealment.”), cert. derded, 548 U.S. 904, 126 S.Ct. 2968, 165 L.Ed.2d 951 (2006); Manas v. VMS Assocs., LLC, 53 A.D.3d 451, 453-54, 863 N.Y.S.2d 4, 7 (1st Dep’t 2008). “General allegations that defendant entered into a contract while lacking the intent to perform it are insufficient to support [a fraud] claim.” N.Y. Univ. v. Continental Ins. Co., 87 N.Y.2d 308, 318, 639 N.Y.S.2d 283, 662 N.E.2d 763, 769 (1995) (holding that allegations of breach of contract “and any covenants implied” do not sound in fraud).
To maintain a claim of fraud in such a situation, a plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages. *630 Bridgestone/Firestone, 98 F.3d at 20 (citations omitted); see, e.g., Coppola v. Applied Elec. Corp., 288 A.D.2d 41, 42, 732 N.Y.S.2d 402, 403 (1st Dep’t 2001). While a misrepresentation that is collateral to the contract may support a fraud in the inducement claim distinct from a breach of contract claim, see Wall v. CSX Transp., Inc., 471 F.3d 410, 416-17 (2d Cir.2006), “the non-disclosure of collateral aims,” such as “allegations about defendants’ states of minds used to support the contention that they intended to breach the contract (i.e. the motives for the breach)[,] ... is insufficiently distinct from the breach of contract claim,” TVT Records, 412 F.3d at 91.
AIG argues that AXA’s fraudulent inducement claims sound in contract at least insofar as they rely on allegations that: (a) AIG promised that the reinsurance facilities would be operated on a facultative obligatory basis, but treated them as purely facultative; (b) AIG selected certain policies to cede to the facilities instead of a cross-section of risks; and (c) AIG increased AXA’s share of risk beyond AXA’s original understanding. AIG contends that to the extent AXA claims AIG secretly intended to treat the facilities as faculta-tive rather than facultative obligatory, this simply reflects an undisclosed intention to breach, not a collateral misrepresentation. It makes the same argument with regard to AXA’s assertions that AIG intended to choose an improper selection of risks to cede to the facilities and to manipulate AXA’s percentage stake in the ceded risks. AIG further argues that whether it did such things in order to offload unprofitable business and eliminate its own exposure only suggests a motive for breaching the parties’ reinsurance agreements. On the other hand, AXA argues that AIG’s misrepresentations were collateral to the parties’ agreements and thus sufficiently distinct to support its claims of fraudulent inducement.
It is not clear, on the record before us, whether the District Court gave these arguments sufficient consideration. The basis for the stay of the arbitration commenced by AIG entered in March 2006 by then-Judge Mukasey is not entirely clear. Although the District Court denied AIG’s in limine motion in January 2008 on the ground that this issue had already been decided, the District Court’s denial of summary judgment in July 2007 did not clearly address the parties’ arguments on this issue. See AXA Versicherung AG v. N.H. Ins. Co., No. 05 Civ. 10180, 2007 WL 2142302, 2007 U.S. Dist. LEXIS 54295 (S.D.N.Y. July 23, 2007). The District Court referred to the distinction between fraud and contract claims in analyzing AIG’s punitive damages arguments, both at summary judgment and post-trial, but the Court did not explain why AXA’s claims “did not involve a breach of contract.” See id., 2007 WL 2142302, at *2, 2007 U.S. Dist. LEXIS 54295, at *7-8; AXA Versicherung AG v. N.H. Ins. Co., No. 05 Civ. 10180, 2008 WL 1849312, at *2 & n. 1, 2008 U.S. Dist. LEXIS 33950, at *4-6 & n. 1 (S.D.N.Y. Apr. 22, 2008). Rather, the portions of the trial transcript it relied upon during the course of this discussion explain only that a rescission claim should be litigated before any arbitration of a contract counter-claim by AIG because if AXA were to win rescission, there would be nothing left to arbitrate. See Trial Tr. at 1472-75. Nor does the rest of the record, including the portions cited in AXA’s post-argument submission to us, establish why the District Court apparently rejected AIG’s argument that at least some of AXA’s claims were subject to arbitration.
We believe a remand is appropriate to allow the District Court, which is intimately familiar with the full scope of AXA’s evidence after presiding over the jury trial and issuing several rulings in this case, the *631 opportunity to address in the first instance the extent to which AXA’s allegations sound in contract as opposed to fraud. Our consideration of AIG’s first argument on appeal will greatly benefit from a determination of this question.
Such a remand would be unnecessary if, as AXA contends, AIG waived its right to arbitration. “[A] party waives its right to arbitration when it engages in protracted litigation that prejudices the opposing party.... There is no bright-line rule, however, for determining when a party has waived its right to arbitration: the determination of waiver depends on the particular facts of each case.” In re Crysen/Montenay Energy Co., 226 F.3d 160, 162-63 (2d Cir.2000) (internal quotation marks omitted), cert. denied, 532 U.S. 920, 121 S.Ct. 1356, 149 L.Ed.2d 286 (2001). We have suggested several factors for con sideration, such “as (1) the time elapsed from commencement of litigation to the request for arbitration, (2) the amount of litigation (including any substantive motions and discovery), and (3) proof of prejudice.” Id. at 163 (internal quotation marks omitted). “The key to a waiver analysis is prejudice.” Thyssen, Inc. v. Calypso Shipping Corp., S.A., 310 F.3d 102, 105 (2d Cir.2002) (per curiam), cert. denied, 538 U.S. 922, 123 S.Ct. 1573, 155 L.Ed.2d 312 (2003). “We review de novo a district court’s decision regarding waiver of a party’s right to arbitrate, but we review the factual findings on which the district court relied for clear error.” Id. at 104.
In this case, AXA raised the possibility of waiver at summary judgment in response to AIG’s arbitration argument, but the District Court did not opine on it. In our view, the current record leaves unanswered several questions that may be critically relevant to a determination of whether AIG waived its right to arbitration. Thus, we also remand the case to the District Court for creation of a record and resolution of AXA’s waiver argument in the first instance.
A few factual clarifications in particular would facilitate consideration of the first and critical third waiver factors, the time elapsed and prejudice. For example, it would be helpful to learn whether AIG pressed its contract/fraud distinction when opposing Judge Mukasey’s stay of arbitration and whether the basis for the stay encompassed this issue. The answers to these questions would also affect AXA’s argument that AIG sat on its rights by failing to take an interlocutory appeal from that stay. In addition, the prejudice to AXA depends in part on the extent to which AIG obtained benefits here that would not have been available in arbitration, an inquiry that itself turns on the extent to which AXA’s claims are arbitra-ble and non-arbitrable. See, e.g., S & R Co. of Kingston v. Latona Trucking, Inc., 159 F.3d 80, 83-84 (2d Cir.1998), cert. dismissed, 528 U.S. 1058, 120 S.Ct. 629, 145 L.Ed.2d 506 (1999).
Finally, we note that resolution of these issues may very well affect consideration of the remainder of AIG’s arguments on appeal. Even if AIG is found to have waived its right to arbitration, a determination that AXA’s claims sound in contract to any extent would affect the analysis of whether they should have been tried to the bench instead of the jury, whether they are barred by the statute of limitations, and the propriety of punitive damages. At this point, however, we need not pursue these matters further.
Accordingly, we REMAND the case to the District Court for further proceedings consistent with this order. Under the procedure set forth in United States v. Jacobson, 15 F.3d 19, 21-22 (2d Cir.1994), we direct that the mandate shall issue forthwith and that, after the district court’s *632 decision, jurisdiction shall be returned to this Court upon a letter request from any party filed within 30 days of that decision. Upon such a restoration of jurisdiction, the matter is to be sent to this panel.