■ WILSHIRE WESTWOOD PLAZA LLC, Appellant-Respondent, v UBS REAL ESTATE SECURITIES, INC., Respondent-Appellant. [942 NYS2d 75]—

Judgment, Supreme Court, New York County (Charles E.

Ramos, J.), entered August 19, 2011, dismissing the complaint and counterclaims pursuant to an order, same court and Justice, entered June 13, 2011, which granted defendant UBS Real Estate Securities, Inc.'s (UBS) motion for summary judgment and granted plaintiff Wilshire Westwood Plaza LLC's (Wilshire) motion to dismiss UBS's counterclaims for attorney's fees, unanimously modified, on the law, to reinstate the counterclaim for attorney's fees sought under the loan agreement, and grant UBS's motion for partial summary judgment to recover such fees, and otherwise affirmed, without costs. Appeals from the aforementioned order, unanimously dismissed, without costs, as subsumed in the appeals from the judgment.

Defendant UBS loaned plaintiff Wilshire $68.75 million (the loan) under a loan agreement, which also granted Wilshire a one-time "right of first refusal" (ROFR) to purchase the loan if UBS were to contemplate selling the loan to a third party. When UBS later announced an intention to transfer the loan to StabFund Sub NCA AG (StabFund), a "stabilisation fund" that was set up as a special purpose vehicle by the Swiss National Bank for the Swiss government's bailout of UBS during the credit crisis, Wilshire initially questioned whether such a transaction constituted a "sale" so as to invoke the ROFR, but ultimately declined to exercise the ROFR. Months after the transfer of the loan to StabFund, Wilshire and UBS met, during which UBS asked Wilshire if Wilshire would like to extend or refinance the loan with UBS. Wilshire responded in the affirmative. Before UBS began the underwriting process, it forwarded Wilshire a "Pre-Negotiation Agreement" (PNA), stating that such agreement must be executed before the parties could proceed with further discussions regarding a potential modification of the loan. Wilshire signed the PNA, which contained a provision stating that Wilshire, as the borrower of the loan, agreed to release UBS "of and from all damage, loss, claims, demands, liabilities, obligations, actions and causes of action whatsoever that Borrower . . . may now have or claim to have against them, whether presently known or unknown . . . on account of or in any way touching, concerning, relating to, arising out of or founded upon the Loan or any of the Loan Documents."

Wilshire alleges that for months after it executed the PNA, it tried to schedule a meeting with UBS to discuss a loan modification, but UBS repeatedly canceled and rescheduled the meetings. The parties ultimately never met. Rather, UBS, as StabFund's agent, later announced a proposed sale of the loan to a "vulture fund" called Garrison Investment Group. Wilshire

objected and commenced an action to bar the transfer, claiming that the prior transfer of the loan to StabFund was not a "sale" that could invoke the ROFR, and sought to exercise the ROFR to block the sale to Garrison Investment Group. Wilshire, however, withdrew that action after StabFund decided to hold the loan until maturity.

Wilshire then commenced this action, alleging that UBS breached the loan agreement by failing to apprise it of all the "material terms" of the proposed transfer to StabFund so as to enable it to make a fully informed decision about whether or not to exercise the ROFR. Specifically, Wilshire alleges that, under the StabFund transaction, UBS had agreed to fund 10% of the price of the loan, effectively giving StabFund a 10% discount on the loan, and that such discount was not offered to Wilshire. Wilshire also alleges that UBS fraudulently induced it to sign the PNA, which embodies the release.

The court properly dismissed Wilshire's fraudulent inducement claim on the ground that it was essentially a breach of contract claim. Wilshire's allegation that UBS promised to commence negotiations regarding an extension or refinancing of the loan, while never intending to do so, is essentially that UBS never intended to honor its obligation to negotiate under the PNA (*see MP Innovations, Inc. v Atlantic Horizon Intl., Inc.*, 72 AD3d 571, 573 [2010]; *Mañas v VMS Assoc., LLC*, 53 AD3d 451, 453-454 [2008]; *Gordon v Dino De Laurentiis Corp.*, 141 AD2d 435, 436 [1988]). Contrary to Wilshire's contention, UBS's oral promises of commencing discussions were not collateral to the PNA, as the agreement contemplated negotiations (*see Deerfield Communications Corp. v Chesebrough-Ponds, Inc.*, 68 NY2d 954, 956 [1986]; *Glanzer v Keilin & Bloom*, 281 AD2d 371 [2001]).

Further, the PNA's provision stating that either party may terminate negotiations "at any time and for any reason," contradicted UBS's promise to undertake negotiations and precluded Wilshire from reasonably relying on that promise (*see Sanyo Elec. v Pinros & Gar Corp.*, 174 AD2d 452, 453 [1991]).

California Civil Code § 1542, applicable here pursuant to the parties' choice of law agreement, does not bar the enforceability of the release insofar as it releases "unknown" claims in a commercial dispute where the parties are sophisticated business entities, and represented by counsel (*Larsen v Johannes*, 7 Cal App 3d 491, 505-506, 86 Cal Rptr 744, 753 [1970]; *see also Petro-Ventures, Inc. v Takessian*, 967 F2d 1337, 1342 [9th Cir 1992]; *Brae Transp., Inc. v Coopers & Lybrand*, 790 F2d 1439, 1444-1445 [9th Cir 1986]). In any event, the breach of contract claims

here were not "unknown," as public information concerning transfers of UBS assets to StabFund under the bailout package were available before Wilshire signed the PNA (*see Brae Transp.*, 790 F2d at 1444).

The court improperly dismissed UBS's claim for attorney's fees under the loan agreement. A reasonable reading of section 10.13 of the agreement indicates that it contemplates award of costs and attorney's fee to UBS where, as here, UBS defends an action against Wilshire that arises from the loan agreement (*see International Billing Servs., Inc. v Emigh*, 84 Cal App 4th 1175, 1183, 101 Cal Rptr 532, 537 [2000]; *cf. Campbell v Scripps Bank*, 78 Cal App 4th 1328, 1337, 93 Cal Rptr 635, 643 [2000]). However, the court properly dismissed UBS's claim for attorney's fees under the PNA. That agreement contemplates reimbursement of fees incurred only during negotiations of or under the PNA.

We have reviewed the parties' remaining contentions and find them unavailing. Concur—Mazzarelli, J.P., Saxe, Moskowitz, Manzanet-Daniels and Román, JJ.