■ GSO COASTLINE CREDIT PARTNERS LP et al., Appellants, et al., Plaintiffs, v GLOBAL A&T ELECTRONICS LTD., Respondents. [30 NYS3d 109]—

Orders, Supreme Court, New York County (Eileen Bransten, J.), entered on or about July 17, 2015, which, to the extent appealed from as limited by the briefs, granted defendants' motions to dismiss the second, third, fourth, fifth, seventh, eighth, tenth, eleventh, twelfth and thirteenth causes of action, unanimously modified, on the law, to deny the motions as to the second, third, fourth, fifth, seventh, eighth, tenth and eleventh causes of action, and otherwise affirmed, without costs.

Plaintiffs are purchasers of senior secured notes (senior notes) issued in February 2013 by defendant Global A&T Electronics Ltd. (GATE). The senior notes are secured by first-priority liens on certain assets of GATE and its subsidiaries (the collateral). The securitization and payment priority of the senior notes, relative to notes held by GATE's junior debt holders, is set forth in an intercreditor agreement (ICA) and an indenture. Under sections 1.1 (second priority agreement) and 2.1 of the ICA, there is a clear prohibition against the replacement, refinancing or repayment of second-priority secured obligations with first-priority secured obligations. Any such replacement debt is, by definition, a second-priority obligation relative to the senior notes held by plaintiffs.

In September 2013, without notice to, or consent of, the

senior note holders, GATE consummated a debt exchange that allegedly allowed GATE's junior debt holders, including one of its two controlling shareholders, to "leapfrog" up GATE's debt priority structure by swapping their second-priority secured interests for first-priority secured notes (the additional notes) that purportedly rank pari passu with plaintiffs' senior notes.

The complaint states a cause of action for breach of sections 2.2 and 3.2 of the ICA, which, respectively, prohibit the alteration of the priority scheme set forth in section 2.1 of the ICA and any actions the purpose or effect of which is to make any lien securing second-priority obligations pari passu with, or senior to, the liens securing the first-priority obligations, including the senior notes.

The complaint states a cause of action for breach of section 4.12 of the indenture, since GATE placed a new lien on the collateral securing the senior notes, and the new lien is not a "Permitted Lien" under subsection 17 of the definition of that term in the indenture, because any new liens are subject to the priority scheme set forth in the ICA. Indeed, section 9.1 of the ICA provides that, in the event of a conflict between the terms of the ICA and the indenture, the ICA controls. Nor is the new lien a "Permitted Lien" under subsection 11 of the definition of that term in the indenture, which expressly provides that any such lien remains subject to the priority scheme under the ICA. Because the lien placed on the collateral was not a permitted lien, plaintiffs have also alleged a breach of section 4.18 (b) of the indenture.

The complaint states a cause of action for breach of section 4.16 of the indenture. Based on the express terms of section 9.3 (b) of the ICA, GATE's second amendment to the ICA, effectuating the issuance of the additional notes that purport to rank pari passu with the senior notes, was subject to the provisions of the ICA, including the provisions governing the priority scheme. Because the second amendment to the ICA did not conform with, and sought to circumvent, the terms of the ICA concerning the priority scheme, GATE lacked the authority to enter into it.

Moreover, the second amendment to the ICA was not permitted under section 4.16 (b) (i), (ii) or (v) of the indenture since there is no inconsistency or ambiguity in the ICA, section 4.16 (b) (ii) expressly provides that any increased indebtedness is subject to the terms of the ICA, which includes the priority scheme, and any additional notes secured by the collateral are still subject to the priority scheme.

The complaint states a cause of action for breach of section

4.11 of the indenture by alleging that GATE could have executed the debt exchange under more favorable terms in an arm's-length transaction.

As the complaint states a cause of action for breach of the indenture, the cause of action for declaratory relief should be reinstated.

The controlling shareholder defendants may not rely on the economic interest defense to the cause of action for tortious interference with contract since, in bringing about the debt exchange, they were not acting to protect their legal or financial stake in GATE (*see White Plains Coat & Apron Co., Inc. v Cintas Corp.*, 8 NY3d 422, 426 [2007]). Rather, they were acting to protect the interests of defendant Costa Esmeralda Investments Limited, which is an affiliate of one of the controlling shareholders. As plaintiffs point out, rather than positively affecting GATE, the debt exchange caused a credit rating agency to downgrade the senior notes.

The complaint fails to state causes of action for fraudulent inducement and fraud since the representations on which plaintiffs rely are nonactionable statements of either intent or belief (*see Mañas v VMS Assoc., LLC*, 53 AD3d 451, 453-454 [1st Dept 2008]). Concur—Tom, J.P., Renwick, Richter, Kapnick and Webber, JJ.