THE HAWTHORNE GROUP, LLC, Appellant, v RRE VENTURES et al., Respondents. [776 NYS2d 273]—

Order, Supreme Court, New York County (Charles Edward Ramos, J.), entered October 6, 2003, which granted defendants summary judgment dismissing the second, fourth and fifth causes of action in the complaint entirely and the first and third causes of action in part, denied plaintiff's cross motion for summary judgment, granted defendants a protective order striking plaintiff's notice to admit and corresponding interrogatories and document requests, denied plaintiff's cross motion for an order compelling discovery except to direct defendants' production of items 7, 10 and 13 in plaintiff's September 2002 document request and the scheduling of depositions, and imposed a discovery-related $1,000 sanction on plaintiff, unanimously modified, on the law, the facts and in the exercise of discretion, defendants' motion for summary judgment denied entirely with respect to the first and third causes of action, plaintiff's cross motion for an order compelling responses to its September 2002 document request granted to the further extent of requiring defendants to respond to items 1, 2, 3, 4, 5, 6, 8, 11, 12, 15, 16, 21 and 25, except that defendants' response to item 6 may be confined to the 10 investors listed therein, and otherwise affirmed, without costs.

This is a dispute over a finder's fee agreement. Defendants constitute a limited partnership formed as an investment fund, its general partner, the managing members and partner of the general partner, and an umbrella entity. The general partner contracted plaintiff to act as a finder, inviting investors for the limited partnership. The record shows that with the enthusiastic support of defendants and their employees, plaintiff pursued institutional investors and their "gatekeepers" (consultants retained to research and approve investments for the institutional funds).

Plaintiff claims to have procured two investors, both public pension funds serving New York City public employees and represented by a prominent West Coast gatekeeper. Although the evidence shows considerable contact between the principals of plaintiff and defendants concerning these two investors and others represented by the gatekeeper, defendants have refused to pay commissions to plaintiff for these placements and one other involving a university pension fund in the State of Washington.

The key issue in this case involves the document that served as exhibit A to the parties' finder's agreement. The agreement precluded plaintiff from compensation for procuring investment from certain entities to be listed on this exhibit A. Defendants claimed—and the motion court agreed—that plaintiff was bound by a version of exhibit A annexed to defendants' papers in support of their motion for summary judgment. Plaintiff disputes the genuineness of this exhibit, offers its own version of exhibit A (which is blank except for the heading), and argues that defendants improperly seek to modify the blank exhibit, which, according to plaintiff, was the version attached to the agreement when it was executed in late May 2001. In finding for defendants, the motion court treated the valid and controlling nature of the version of exhibit A proffered by defendants as a given, when, in fact, its contents are hotly disputed.

The identity of the potential investors to be included on a list of prohibited offerees comprising exhibit A, which the parties colloquially called the "carve-out list," was the subject of discussion as early as April 2001. As noted, plaintiff contends that when the finder's agreement was signed on May 29 or 30 of that year, exhibit A was blank. At the same time, the parties and their attorneys clearly understood that the carve-out list was to be the subject of a process continuing even after the effective date of the agreement. The evidence shows a so-called White Board of prospective investors was maintained while negotiation of the agreement was underway, and affidavit evidence not factually countered by the defense suggests that plaintiff may have been instructed by representatives of RRE to disregard the draft carve-out list then extant. Affidavit evidence, supported by copies of e-mails and not contradicted by any evidence submitted by defendants, suggests that the pursuit by plaintiff of the two institutional investors in question continued after the agreement was executed, with the frequently expressed approval of defendants' key personnel. The record does not show when, if ever, there was a meeting of minds among the parties as to the contents of a final carve-out list.

We reject plaintiff's argument for entitlement to judgment as a matter of law, since the record shows that its principals understood that exhibit A, whichever version is established, was not the final word on the subject. Furthermore, a construction of the agreement that would result in a contract with no prohibited offerees is undermined by evidence of the parties' careful negotiations on criteria for the carve-out list (*see Yoi-Lee Realty Corp. v 177th St. Realty Assoc.*, 208 AD2d 185, 190 [1995]).

On the other hand, the record does not support treating defendants' version of exhibit A as final. Even if there were evidence that the parties had reached a meeting of minds on exhibit A in the summer of 2001, it would show that plaintiff's pursuit of the two institutional investors was a matter of record during the time that exhibit A was under negotiation, and evidence in the record would allow a factfinder to conclude that defendants had pointedly encouraged plaintiff to depart from whatever carve-out list was in existence.

The contents of the carve-out list on which the parties agreed, if any, is a question of fact requiring trial. In any event, there is a need for more discovery evident on the existing record (*see "Anonymous" v Streitferdt,* 172 AD2d 440 [1991]).

There is likewise a question of fact as to whether defendants should be estopped from relying on the statute of frauds in seeking to enforce their proffered version of exhibit A (*cf. Zaveri v Rosy Blue, Inc.,* 4 AD3d 146 [2004]). A factfinder could also conclude that there was partial performance unequivocally referable to a modification of defendants' version of the carve-out list (*cf. Rose v Spa Realty Assoc.,* 42 NY2d 338, 343-344 [1977]).

For the same reasons, the third cause of action, for tortious interference with contract, must be reinstated. The motion court's order allows plaintiff to pursue contract and tortious interference claims as they concern the university investor. There is no reason to treat the claims concerning the two New York City investors differently as a matter of law.

Because plaintiff's causes of action should be reinstated to the above-indicated extent, its permissible document discovery should be expanded correspondingly. Defendants' responses to the September 2002 notice for production of documents must be modified to the extent indicated. Denial of discovery as to the remaining items on that notice was not an improvident exercise of discretion.

Dismissal of plaintiff's second, fourth and fifth causes of action was proper. A cause of action for breach of the implied duty of good faith and fair dealing cannot be maintained where the alleged breach is "intrinsically tied to the damages allegedly resulting from a breach of the contract" (*see Canstar v Jones Constr. Co.,* 212 AD2d 452, 453 [1995]). In a fraudulent inducement claim, the alleged misrepresentation should be one of then-present fact, which would be extraneous to the contract and involve a duty separate from or in addition to that imposed by the contract (*see Deerfield Communications Corp. v Chesebrough-Ponds, Inc.,* 68 NY2d 954, 956 [1986]), and not

merely a misrepresented intent to perform (*see Smart Egg Pictures v New Line Cinema Corp.*, 213 AD2d 302, 303 [1995]). The existence of a valid contract claim also bars a cause of action in quantum meruit (*see e.g. Sheiffer v Shenkman Capital Mgt.*, 291 AD2d 295 [2002]). Plaintiff's pleadings run afoul of all of these principles.

The striking of plaintiff's November 2002 notice to admit and related discovery devices was not an improvident exercise of discretion. A notice to admit, pursuant to CPLR 3123 (a), is to be used only for disposing of uncontroverted questions of fact or those that are easily provable, and not for the purpose of compelling admission of fundamental and material issues or ultimate facts that can only be resolved after a full trial (*see Meadowbrook-Richman, Inc. v Cicchiello*, 273 AD2d 6 [2000]). A review of the 302 requests to admit at issue here shows that even after a judicial directive to reduce the number of items to 25, plaintiff attempted to use the notice to admit in the prohibited manner. The monetary sanction was not an improvident exercise of discretion. Concur—Tom, J.P., Andrias, Saxe, Sullivan and Marlow, JJ.