**Denver Wewatta (Co) LLC v Amtrust Title Ins. Co.**

2024 NY Slip Op 32847(U)

August 12, 2024

Supreme Court, New York County

Docket Number: Index No. 653618/2022

Judge: Nancy M. Bannon

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | | |
|---|---|---|
| **PRESENT:** | **HON. NANCY M. BANNON** | **PART** 61M |
| | *Justice* | |

------------------------------------------------------------------------------X

DENVER WEWATTA (CO) LLC,

Plaintiff,

- v –

AMTRUST TITLE INSURANCE COMPANY and WEWATTA
OWNER LLC,

Defendants.

------------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 653618/2022 |
| **MOTION DATE** | 05/23/2024 |
| **MOTION SEQ. NO.** | 003 |

**DECISION + ORDER ON
MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 003) 101, 102, 103, 112, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 134, 136, 137

were read on this motion to/for          AMEND CAPTION/PLEADINGS          .

## I.     INTRODUCTION

In this action alleging, *inter alia*, breach of a purchase sale agreement (the "PSA"), defendant Wewatta Owner (the "Seller") moves pursuant to CPLR 3025 to amend its answer with counterclaims to (1) add a new counterclaim of fraudulent inducement against the plaintiff Denver Wewatta (Co) LLC (the "Purchaser") and (2) to add as new parties LCN Capital Partners LP ("LCN"), Max Eliot, and Edward LaPuma (collectively, the "LCN Parties"), and assert a cause of action for aiding and abetting fraud against each of them, based on recent discovery. The Purchaser opposes the motion.  The motion is granted in part.

## II.     BACKGROUND

From April to August 2022, the Seller engaged in negotiations with LCN and two of its employees, Eliot and LaPuma, regarding the sale and purchase of real property located at 1551 Wewatta Street in Denver, Colorado (the "Property").  The Purchaser was formed as a subsidiary of LCN for this transaction. In August 2022, the Purchaser and the Seller executed the PSA, which stipulated that the Purchaser would acquire the Property for $162.25 million, with a closing date of December 30, 2022.  The Purchaser delivered $7 million to defendant Amtrust Title Insurance Company (the "Escrow Agent") as a deposit pursuant to Sections 4(a)(i)

**653618/2022   DENVER WEWATTA (CO) LLC vs. AMTRUST TITLE INSURANCE COMPANY ET AL
Motion No.  003**

**Page 1 of 8**

and 4(a)(ii) of the PSA. The Purchaser agreed to assume an existing loan made to the Seller in 2021 in the principal amount of $112 million. Under Section 15(a), the Purchaser's obligation to close on the purchase of the Property was conditioned upon the parties obtaining consent from the Seller's existing lender for the Purchaser to assume the loan. Under Section 10(c)(iii), the Purchaser would be entitled to the remedies detailed under Section 10(d) if the existing lender denied consent on or before December 30, 2022. Section 15(c) required the parties to cooperate and act in good faith in obtaining consent from the existing lender. Section 10(d) provided that the Purchaser can recover its $7 million deposit and "receive reimbursement from Seller of Purchaser's Transaction Costs of up to $100,000" if the failure to obtain consent was due to "any reason other than solely due to Purchaser's proposed replacement guarantor's failure to satisfy the net worth and liquidity requirements for the guarantor". Under Section 20(a), the Seller was entitled to receive the deposit and to terminate the PSA if the Purchaser defaulted on its obligations.

On September 21, 2022, the Purchaser sent a termination notice to the Seller and Escrow Agent seeking a return of the $7 million deposit, claiming that the existing lender had denied consent for the Purchaser to assume the loan. The Seller rejected the termination notice, stating that the existing lender had not denied consent but had merely expressed concerns over the Purchaser's ability to assume the loan.

The Purchaser commenced this action on October 3, 2022, alleging breach of contract against the Seller and Escrow Agent, and seeking a return of the $7 million deposit from the Escrow Agent and $100,000 from the Seller. The Seller answered on November 11, 2022, asserting ten affirmative defenses and seven counterclaims sounding in breach of contract and breach of the implied covenant of good faith and fair dealing. The Seller seeks to have the Escrow Agent release the $7 million deposit to the Seller, termination of the PSA, attorney's fees and declaratory judgment that, *inter alia*: the Purchaser improperly terminated the PSA because the existing lender did not deny consent for the Purchaser to assume the loan, the Purchaser is therefore not entitled to recover any transaction costs, and even if the termination of the PSA was not improper, the Purchaser is at most entitled to recover its deposit but not any other damages. The Escrow Agent filed a separate answer to the Purchaser's claims and Seller's counterclaims on November 15, 2022.

653618/2022   DENVER WEWATTA (CO) LLC vs. AMTRUST TITLE INSURANCE COMPANY ET AL
Motion No. 003

Page 2 of 8

2 of 8

The Purchaser moved for summary judgment and the Seller cross-moved for the same relief (MOT SEQ 001). Both motions were withdrawn without prejudice. The Seller's motion to seal was denied (MOT SEQ 002). Discovery ensued.

The Seller filed the instant motion on March 14, 2024, seeking to amend its answer to assert a new counterclaim for fraudulent inducement against the Purchaser, and to join LCN, LaPuma, and Eliot as counter-defendants and assert claims for aiding and abetting fraud against each of them respectively. In its proposed amended answer, the Seller states that, during contract negotiations, the Purchaser, the LCN Parties, and the Seller agreed that LCN Core Income Fund REIT ("LCN REIT") would serve as the proposed replacement guarantor for the Purchaser's assumption of the existing loan. The proposed amended answer alleges that the Purchaser and LCN Parties made written and oral misrepresentations about LCN REIT's ability to assume the existing loan. Under the terms of the existing loan, a replacement guarantor was required to have a consolidated net worth of at least $150 million and liquidity of $15 million. The Seller alleges that the Purchaser and LCN Parties misrepresented that LCN REIT was backed by LCN's platform, which possessed $1.4 billion in fully discretionary equity capital, and that LCN REIT had a net worth of $150 million and liquidity of $15 million. However, the Seller asserts that, during discovery, in December 2023, pursuant to a June 2023 Request for Production, the Purchaser produced a KPMG audit showing that LCN REIT had net assets of only $46,753,885 and liquidity of just $81,087, far below the loan assumption requirements. The Seller alleges that, due to these misrepresentations, it passed up a competitor's proposal to purchase the Property and instead entered into the PSA with the Purchaser. The Seller seeks damages in the amount of the loss of the competitor's proposal and the difference between the value of the Property at the time of the fraud and the value of the Property at the time the fraud was discovered. The Seller seeks the same relief for the proposed aiding and abetting fraud claims against the LCN Parties. In the proposed amended answer, the Seller also demands a jury trial.

The Purchaser filed a Note of Issue on July 15, 2024, seeking a trial without jury and certifying that discovery is now complete.

### III.    DISCUSSION

It is well settled that leave to amend a pleading should be freely granted absent evidence of substantial prejudice or surprise, or unless the proposed amendment is palpably

**653618/2022   DENVER WEWATTA (CO) LLC vs. AMTRUST TITLE INSURANCE COMPANY ET AL**
**Motion No.  003**

Page 3 of 8

3 of 8

insufficient or patently devoid of merit. See CPLR 3025(b); JPMorgan Chase Bank, N.A. v Low Cost Bearings NY, Inc., 107 AD3d 643 (1st Dept. 2013); Cherebin v Empress Ambulance Serv., Inc., 43 AD3d 364, 365 (1st Dept. 2007). "Nevertheless, a court must examine the merit of the proposed amendment in order to conserve judicial resources." 360 West 11th LLC v ACG Credit Co. II, LLC, 90 AD3d 552, 553 (1st Dept. 2011). The burden is on the party opposing the motion to establish substantial prejudice or surprise if leave to amend is granted. See Forty Cent. Park S., Inc. v Anza, 130 AD3d 491 (1st Dept. 2015).

   A.   Fraudulent Inducement Counterclaim against the Purchaser

"It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." Dormitory Authority v Samson Construction Co., 30 NY3d 704 (2018) (citation omitted). However, the Court of Appeals has also recognized that "a contracting party may be charged with a separate tort liability arising from a breach of a duty distinct from, or in addition to, the breach of contract." North Shore Bottling Co. v Schmidt & Sons, 22 NY2d 171 (1968); see 37 E. 50th St. Corp. v Rest. Grp. Mgmt. Servs., L.L.C., 156 AD3d 569 (1st Dept. 2017). Thus, in actions involving parties to a contract, a plaintiff states a cause of action sounding in fraudulent inducement where he pleads that the defendant misrepresented a present fact extraneous to the contract with knowledge of its falsity, the plaintiff justifiably relied on the misrepresentation, and the plaintiff suffered damages. See The Hawthorne Group, LLC v RRE Ventures, 7 AD3d 320 (1st Dept. 2004); First Bank of Americas v Motor Car Funding, Inc., 257 AD2d 287 (1st Dept. 1999); see generally Eurycleia Partners, LP v Seward & Kissel, LLP, 12 NY3d 553 (2009). Fraudulent inducement must be pleaded with particularity under CPLR 3016(b).

Here, the Seller adequately alleges that the Purchaser misrepresented the true value of LCN REIT's net worth and liquidity throughout the negotiations both orally and in writing. The Purchaser allegedly represented that LCN REIT had a backing of $1.4 billion from the entire LCN platform, but that the Purchaser knew this was false. The Purchaser argues that it did not misrepresent LCN REIT's net worth and liquidity, as it never represented that the entire LCN platform was going to backstop LCN REIT with $1.4 billion. Instead, the Purchaser states that it represented that LCN REIT was backed by the Bedrock Fund, which contained exactly $150 million in capital investments from its sole investor. The Purchaser also submits the KPMG Audit, which purports to show that LCN REIT had $150,500,000 in total capital commitments. However, as the Seller correctly points out, the same KPMG Audit shows that LCN REIT's total

**653618/2022   DENVER WEWATTA (CO) LLC vs. AMTRUST TITLE INSURANCE COMPANY ET AL**                                                     **Page 4 of 8**
**Motion No.  003**

4 of 8

assets were $46,753,885, and that the audit expressly declined to include capital commitments as part of LCN REIT's assets. Thus, the Seller's allegation that the Purchaser misrepresented the net worth and liquidity of LCN REIT is not patently devoid of merit based on the record presently before the court.

Furthermore, the Seller adequately alleges justifiable reliance, as this information was not publicly available for the Seller to learn on its own, and as the Purchaser did not just withhold information but affirmatively misrepresented LCN REIT's financial status during negotiations. In any event, whether the Seller was justified in relying on the Purchaser's representations is a factual determination that cannot be resolved at the pleading stage. See Remediation Cap. Funding LLC v Noto, 147 AD3d 469 (1st Dept. 2017).

The Purchaser's argument that the Seller fails to allege proper damages is also unavailing. The Seller alleges that reliance on the Purchaser's misrepresentations caused it to forego a proposal from a competitor, and it seeks as damages loss of the competitor's proposal and the difference between the value of the Property at the time of the alleged fraud and the value of the Property at the time the fraud was uncovered. Damages for foregone opportunities are appropriate for a fraud claim. See Manas v VMS Assocs., LLC, 53 AD3d 451 (1st Dept. 2008); Coppola v Applied Elec. Corp., 288 AD2d 41 (1st Dept. 2001). Furthermore, a fraudulent inducement claim does not require damages to be pleaded with particularity. See PF2 Sec. Evaluations, Inc. v Fillebeen, 171 AD3d 551, 553 (1st Dept. 2019), citing A.S. Rampell, Inc. v Hyster Co., 3 NY2d 369, 383 (1957); Kensington Publ. Corp. v. Kable News Co., 100 AD2d 802 (1st Dept. 1984).

Further, the Seller's proposed fraudulent inducement counterclaim is not duplicative of its counterclaim for breach of contract because it is not based on an alleged expression of a future expectation or intent to perform. See Pate v BNY Mellon-Alcentra Mezzanine III, LP, 163 AD3d 429 (1st Dept. 2018). Here, the Seller alleges that, during negotiations, the Purchaser misrepresented present facts collateral to the PSA, i.e., that LCN REIT had a net worth of $150 million and liquidity of $15 million and was backed by the entire LCN platform. See Gosmile, Inc. v Levine, 81 AD3d 77 (1st Dept. 2010). Thus, the Seller does not allege that the Purchaser made a promise while concealing its intent not to perform (see Cronos Group Ltd. v XcomIP, LLC, 156 AD3d 54, 62 [1st Dept. 2017]), but instead alleges that the Purchaser misrepresented its very ability to perform (see Man Advisors, Inc. v Selkoe, 174 AD3d 435 [1st Dept. 2019]).

653618/2022   DENVER WEWATTA (CO) LLC vs. AMTRUST TITLE INSURANCE COMPANY ET AL
Motion No.  003

Page 5 of 8

5 of 8

[* 5]

The Purchaser also fails to show prejudice or surprise.  This action was initiated in October 2022, and the Seller states that the alleged facts constituting its proposed fraud claim was first revealed during discovery in December 2023 through the production of the KPMG Audit, which was initially requested in June 2023.  The Seller filed the instant motion in March 2024, one month prior to the original note of issue deadline of April 8, 2024.  "Mere delay is insufficient to defeat a motion for leave to amend." Kocourek v Booz Allen Hamilton Inc., 85 AD3d 502, 504 (1st Dept. 2011).  This is particularly true given the Purchaser's belated production of the KPMG Audit six months after the Seller made its initial request in June 2023. See Flowers v 73rd Townhouse LLC, 149 AD3d 420, 421 (1st Dept. 2017).  Moreover, "[p]rejudice requires 'some indication that the [non-movant] has been hindered in the preparation of [its] case or has been prevented from taking some measure in support of [its] position.'" Cherebin v Empress Ambulance Serv., Inc., 43 AD3d 364, 365 (1st Dept. 2007), quoting Loomis v Civetta Corinno Const. Corp., 54 NY2d 18, 23 (1981).  The Purchaser does not make such a showing.  Though the Purchaser notes that the Seller's motion was made after the completion of document production and in the midst of depositions, it does not explain why this timing would result in any prejudice to it should the motion be granted.  Notably, the Purchaser filed the Note of Issue on July 15, 2024, without requesting, in either its opposition to the present motion or separately, an extension of the note of issue deadline or additional discovery should the present motion be granted.

### B.  Aiding and Abetting Fraud Counterclaims against the LCN Parties

In its proposed amended answer, the Seller purportedly seeks to add LCN, Eliot, and LaPuma as new parties to this action and to plead a separate "cause of action" for aiding and abetting fraud against each of them.  The header of the proposed amended answer lists the LCN Parties as "defendants," seemingly in a third-party action, and, in its memorandum of law in support of its motion, the Seller twice refers to the LCN Parties as "third-party defendants." However, pursuant CPLR 1007, a defendant seeking to implead a non-party must file a third-party summons and complaint against the non-party.  The Seller has not done so.  The Seller's motion is therefore denied as procedurally improper to the extent it seeks to assert aiding and abetting fraud claims against the LCN Parties.  Furthermore, the Seller does not demonstrate that the LCN Parties should be joined in this action because their presence is necessary if complete relief is to be accorded to the Seller.  See CPLR 1001(a).

**653618/2022   DENVER WEWATTA (CO) LLC vs. AMTRUST TITLE INSURANCE COMPANY ET AL**
**Motion No.  003**

**Page 6 of 8**

6 of 8

C. The Seller's Jury Demand

CPLR 4102(a) provides that any party may demand a trial by jury by serving and filing a Note of Issue containing such a demand or, if the Note of Issue filed does not contain a jury demand, by serving and filing the demand within 15 days thereafter. The Seller included a jury demand in its proposed amended answer, prior to the Note of Issue filing. Regardless of when filed, the demand is improper as Paragraph 33 of the PSA waives the parties' right to a trial by jury. A party alleging fraudulent inducement may demand a jury trial notwithstanding a contractual jury waiver clause but only if that party is challenging the validity of the contract and seeks recission of the contract as a remedy. See J.P. Morgan Sec. Inc. v Ader, 127 AD3d 506, 507-08 (1st Dept. 2015); Ambac Assur. Corp. v DLJ Mtge. Capital, Inc., 102 AD3d 487 (1st Dept. 2013). Here, the Seller does not challenge the validity of the PSA other than alleging that the Purchaser misrepresented the net worth and liquidity of LCN REIT, resulting in a lost alternative opportunity. And the Seller seeks monetary damages rather than recission. See Zohar CDO 2003-1 Ltd. v Xinhua Sports & Entertainment Ltd., 158 AD3d 594 (1st Dept. 2018). Indeed, the Seller's breach of contract counterclaim is premised upon a valid PSA.

## IV.     CONCLUSION

Accordingly, and upon the foregoing papers, it is

ORDERED that the motion of the defendant Wewatta Owner LLC for leave to amend its answer pursuant to CPLR 3025(b) is granted to the extent that it seeks to add a proposed eighth counterclaim for fraudulent inducement against the plaintiff Denver Wewatta (Co) LLC, and the motion is otherwise denied; and it is further

ORDERED that, within twenty (20) days from entry of this order, defendant Wewatta Owner LLC shall serve a copy of this order with notice of entry and an amended answer in accordance with this decision; and it is further

ORDERED that plaintiff Denver Wewatta (Co) LLC shall reply to the amended answer with counterclaims or otherwise respond thereto within twenty (20) days from the date of said service; and it is further

ORDERED that the Clerk shall mark the file accordingly.

**653618/2022   DENVER WEWATTA (CO) LLC vs. AMTRUST TITLE INSURANCE COMPANY ET AL**

**Motion No.  003**

Page 7 of 8

This constitutes the Decision and Order of the court.

_____
**8/12/2024**
**DATE**

_____
**NANCY M. BANNON, J.S.C.**

| | | | | | |
|---|---|---|---|---|---|
| **CHECK ONE:** | ☐ CASE DISPOSED | | ☒ NON-FINAL DISPOSITION | | |
| | ☐ GRANTED | ☐ DENIED | ☒ GRANTED IN PART | ☐ OTHER |
| **APPLICATION:** | ☐ SETTLE ORDER | | ☐ SUBMIT ORDER | | |
| **CHECK IF APPROPRIATE:** | ☐ INCLUDES TRANSFER/REASSIGN | | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

653618/2022   DENVER WEWATTA (CO) LLC vs. AMTRUST TITLE INSURANCE COMPANY ET AL
Motion No.  003

Page 8 of 8

8 of 8

[* 8]