McCloud v State of New York (2025 NY Slip Op 51205(U))

[*1]

McCloud v State of New York

2025 NY Slip Op 51205(U)

Decided on July 15, 2025

Court Of Claims

Vargas, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 15, 2025
Court of Claims

Armond McCloud, Jr., Claimant,

against
The State of New York, Defendant.

Claim No. 140898

For Claimant:
Elefterakis, Elefterakis & Panek
By: Gabriel P. Harvis, Esq. 
For Defendant:
Hon. Letitia James, Attorney General of the State of New York
By: Antonella Papaleo, Assistant Attorney General

Javier E. Vargas, J.

Papers Considered:
Notice of Motion, Affirmation & Exhibits Annexed 1-7
Affirmation in Opposition 8
Affirmation in Reply & Exhibit Annexed 9
Upon the foregoing papers, the Motion by Claimant Armond McCloud, Jr. ("claimant"), for compliance with a Notice to Admit, is denied in accordance with the following decision.
On September 28, 2023, claimant filed a Verified Claim against Defendant, State of New York ("State"), pursuant to Court of Claims Act § 8-b, seeking damages in excess of one hundred million dollars for injuries he alleges resulted from his unjust conviction and imprisonment. The 68-page Claim contains 155 numbered factual averments asserting, inter alia, that claimant was wrongfully convicted of murder in the second degree and criminal possession of a weapon for the August 4, 1994 shooting death of one Kei Sunada, who was killed during an attempted robbery in the building where both of them resided at Lefrak City in Queens County, New York (see Claim at 1—7). Following a police investigation, New York Police Department ("NYPD") officers arrested claimant and two other young men, Kendo [*2]McDonald and Reginald Cameron, on August 8, 1994, after a lead from Lemuel Tuopaeh, who pointed to "Jr./Headcrack" - claimant's nicknames (id. at 19-20, ¶¶ 60-61). Eventually, claimant confessed that he and the others attempted to rob the victim while armed, and that the gun discharged accidentally (id. at 35, ¶ 66). According to the Claim, the Queens County District Attorney's Office ("Queens DA") prosecuted him based on that confession, resulting in his jury conviction for murder and criminal possession of a weapon on April 15, 1996. The Supreme Court, Queens County (Hanophy, J.) sentenced him to 25 years to life; he spent nearly 27 years in prison and was released on parole on January 31, 2023 (id. at 1-2, ¶¶ 4-6).
In particular, the Claim asserts that the only "substantive evidence" presented against claimant at trial was that false confession, allegedly coerced in response to police pressure by NYPD Detective Carlos Gonzales (id. at 7, 37, ¶¶ 28, 88). According to the Claim, the Queens DA's Conviction Integrity Unit ("CIU") conducted a subsequent investigation which revealed that Detective Gonzales, the lead investigator in the case, had a "track record of obtaining false confessions" (id. at 48—49, ¶¶ 109, 112). On August 24, 2023, Bryce Benjet, the CIU Director filed a successful motion in the Queens County Supreme Court to vacate the conviction pursuant Criminal Procedure Law ("CPL") § 440.10(1)(g), treating the pattern of false confessions obtained by Detective Gonzalez as newly discovered evidence (id. at 2—3, ¶¶ 7-10). This resulted in the vacatur and exoneration of Mr. McCloud's conviction by the Supreme Court (id. at 3, ¶ 11).
The State filed its Verified Answer on November 7, 2023, denying all of claimant's allegations either for lack of sufficient knowledge or through direct denial. The State also asserted several affirmative defenses, including: that claimant has been or will be indemnified by collateral sources for, inter alia, medical care and lost earnings, and that any damages awarded must therefore be reduced; that the Claim fails to allege sufficient facts to support a cause of action under Court of Claims Act § 8-b; and that any injuries or damages sustained were the result of claimant's own conduct that led to his conviction (see Answer).
On January 10, 2025, claimant served a Notice to Admit upon the State requesting admission of his factual allegations prior to trial, pursuant to CPLR 3123, as follows:
1. Admit that Lemuel Tuopaeh's statement was the sole purported evidence connecting claimant to the homicide of Kei Sunada prior to claimant's arrest on August 8, 1994.
2. Admit that both the trial court and Second Department determined Tuopaeh's statements were insufficient to establish probable cause for claimant's arrest.
3. Admit that in 2021, Tuopaeh told the Queens County District Attorney's CIU that the statement attributed to him was false and had been authored by detectives.
4. Admit that no physical evidence connected claimant to the Sunada homicide.
5. Admit that Mr. Sunada's body was discovered in the stairwell of the fourth floor, not the hallway as reported by Detective Gonzalez in official documentation.
6. Admit that the crime scene evidence, including the shell casing, deformed bullet and bullet impression mark, conclusively establish that the shooting occurred in the stairwell.
7. Admit that Mr. Sunanda's blue knapsack and its contents, including a letter addressed to him, a check for $600, and a Walkman, were found at the crime scene but were never vouchered as evidence by the NYPD.
8. Admit that three days before the Sunada homicide, David Kurtz identified Kendo McDonald as the person who assaulted and robbed him in an elevator of a nearby Lefrak City building before dragging him into a stairwell.
9. Admit that Kurtz's identifications of McDonald in both a photo array and lineup were never disclosed to claimant or his defense counsel.
10. Admit that McDonald and Reginald Cameron had previously been arrested for an armed robbery in an elevator in the Colombia Building — the same building where Mr. Sunada was killed — and McDonald was on probation for that offense at the time of the Sunada homicide.
11. Admit that Detective. Wray testified he was previously provided with McDonald and Cameron's names as known perpetrators of robberies in the area.
12. Admit that claimant was interrogated for approximately eight hours before Detective Gonzales obtained his purported confession.
13. Admit that no contemporaneous documentation exists regarding what transpired during those eight hours of interrogation.
14. Admit that Detective Gonzalez testified that other officers informed him "Mr. McCloud did not want to talk to them."
15. Admit that the purported confession was obtained only after Detective Gonzalez told claimant that "everybody is dropping a dime on you" and suggested the shooting was "an accident."
16. Admit that Detective Gonzalez testified under oath that his statements to claimant about the shooting being "an accident" were false.
17. Admit that the description of events in claimant's purported confession matches the false information in Detective Gonzalez's police reports rather than the physical evidence from the crime scene.
18. Admit that Dr. Kevin Parmelee's crime scene reconstruction established that the shooting could not have occurred in the manner described in claimant's purported confession.
19. Admit that Detective Gonzalez previously obtained allegedly false confession from Antron McCray and Kevin Richardson in the Central Park Jogger case.
20. Admit that Detective Gonzalez previously obtained an allegedly false confession from Johnny Hincapie in the Brian Watkins homicide case.
21. Admit that the Queens County District Attorney's Conviction Integrity Unit concluded that Detective Gonzalez had engaged in a pattern of evidence fabrication that undermined the reliability of the statements he obtained in the Sunada case.
22. Admit that in 1994, the NYPD did not provide training regarding proper interrogation techniques.
23. Admit that in 1994, the NYPD had no system for tracking allegations of coerced confessions or fabricated evidence by detectives.
24. Admit that as of 1994 no NYPD supervisor was ever disciplined for enabling or permitting the fabrication of evidence or coercion of false confessions.
25. Admit that the Mollen Commission found "a deep-rooted perception among many officers of all ranks within the Department that nothing is really wrong with compromising facts to fight crime in the real world. (Notice to Admit at 1-3, ¶¶ 1-25).
On January 28, 2025, the State filed a Response to Claimant's Notice to Admit within the 20-day period required by CPLR 3123, objecting to the above-listed "admissions" on the grounds that they are improper and beyond scope of CPLR 3123, given that "[c]laimant seeks admission of disputed matter that go to the heart of the controversy."
By Motion to Deem Facts Admitted filed March 13, 2025, claimant now moves, pursuant to CPLR 3123, for the State to admit the abovementioned factual statements arguing that the doctrine of judicial estoppel prevents the State from denying the same, and simultaneously requests that the Court grant partial summary judgment based on these admissions. Claimant contends that the State has already conceded the facts at issue in the previous Motion to Vacate Conviction filed by the Queens DA, and, consequently, the State - now through the Attorney General - should be estopped from asserting any position inconsistent with those previously advanced by the Queens DA. In doing so, claimant maintains that the Queens DA acted on behalf of the State when litigating the vacatur proceedings. In the same document, claimant withdraws the admission requests for numbers 22 to 25. 
By Affirmation in Opposition filed April 18, 2025, the State opposes the Motion, arguing that claimant is inappropriately asking for relief unavailable under CPLR 3123, because these facts are matters in dispute and cover ultimate conclusions on material issues. The State further argues that claimant incorrectly presumes that the Queens DA's Office is in privity, employed by or an identical entity as the Attorney's General's Office in this civil litigation in the Court of Claims. Finally, the State maintains that claimant's motion for partial summary judgment on the facts to be deemed admitted is not only procedurally improper, but premature inasmuch as it deprives the State from the discovery to which it is entitled (see Aff. Opp. at 7, ¶¶ 20-21)
By Reply Affirmation filed May 6, 2025, claimant reiterates his request for partial summary judgment, based on the doctrine of judicial estoppel, affirming that the Queens DA acted in a quasi-judicial capacity in representation of the State, and the fidelity to the prior record should be indispensable. Claimant purports to correct the State's opposition regarding facts about the crime scene and the location where the killing took place. He contends that the State's privity argument as to collateral estoppel is misplaced, arguing that they are not identical, but that one arm of government could not contradict the other. Claimant further argues that considering judicial estoppel as the correct remedy would not limit the State's discovery, and, alternatively, if judicial estoppel were not to apply, recreating the analyses and interviews from experts and witnesses would be inefficient and "contrary to the interest of justice." This Court disagrees.
Under CPLR 3123(a), a party may serve upon another party a written request that it admits, among other things, "the truth of any matters of fact set forth in the request, as to which the party requesting the admission reasonably believes there can be no substantial dispute at the trial and which are within the knowledge of such other party or can be ascertained by him upon reasonable inquiry" (CPLR 3123[a]). The purpose of a notice to admit is not to obtain admissions on contested matters, but rather to address "uncontroverted questions of fact or those that are easily provable" (Hawthorne Group, LLC v RRE Ventures, 7 AD3d 320, 324 [1st Dept 2004]; Berg v Flower Fifth Ave. Hosp., 102 AD2d 760 [1st Dept 1984]). "A notice to admit which goes to the heart of the matters at issue is improper" as ultimate conclusions "can only be made after a full and complete trial" (DeSilva v Rosenberg, 236 AD2d 508 [2d Dept 1997]; Kalabovic v Fort Place Coop., 159 AD2d 609 [2d Dept 1990]).
Relevant herein, the Unjust Conviction and Imprisonment Act "was enacted to provide redress to innocent persons who prove by clear and convincing evidence that they were unjustly convicted and imprisoned . . . to recover damages against the state" (Ivey v State of New York, 80 NY2d 474, 479 [1992]; see Court of Claims Act § 8-b[1]; Isaac v State of New York, 78 Misc 3d 473 [Ct Cl, 2023]). To prevail on a claim for an unjust conviction, the claimant must establish [*3]with clear and convincing evidence, first, that he or she (a) was convicted, sentenced, and served the conviction, and that (b) the judgment was "vacated and the accusatory instrument dismissed" (Court of Claims Act § 8-b[5][a] and [b][ii]; see David. W. v State of New York, 27 AD3d 111, 114-115 [2d Dept 2006]). Second, the claimant must also establish that he (c) "did not commit any of the acts charged in the accusatory instrument or his acts or omissions charged in the accusatory instrument did not constitute a felony or misdemeanor against the state; and (d) he did not by his own conduct cause or bring about his conviction" (Court of Claims Act § 8-b[5][c], [d]; see Reed v State of New York, 78 NY2d 1, 9 [1991]). These elements are not mere technicalities; they are the central factual and legal questions that go to the very heart of the controversy (id.).
Applying these legal principles to the matter at bar, claimant's motion fails. Pursuant to CPLR 3123(b), a motion to deem facts admitted may be appropriate where a party fails to respond within twenty days to a Notice to Admit. That is not the case here as the State timely responded and objected to the Notice. In any event, the requested admissions by claimant concern ultimate issues of liability, causation, and the nature of the wrongful conviction, including whether claimant's confession was forced, whether he committed a felonious act, was present or not at the crime scene, and whether the State's conduct contributed to his conviction—questions that lie at the core of the action and are strongly contested. Courts have consistently held that such matters cannot be resolved through a notice to admit and instead must be determined at trial (see Altman v Kelly, 128 AD3d 741, 742 [2d Dept 2015]; Two Clinton Sq. Corp. v Friedler, 91 AD2d 1195 [3d Dept 1983]). Because the Notice addresses facts that are neither uncontroverted nor easily provable and concerns ultimate issues that must be resolved by the trier of fact, the request is improper. 
This notwithstanding, claimant invokes the doctrine of judicial estoppel, asserting that the State—through the Attorney General in this action—is contradicting factual representations previously made in the underlying criminal proceedings by the Queens DA, particularly in the Affirmation of CIU Director Benjet, submitted in support of the motion to vacate claimant's conviction and sentence. However, this argument is misplaced. The State is not denying or disavowing those prior representations; the State is properly objecting under CPLR 3123 to the attempt to compel its admissions on issues that are not within its knowledge or "ascertain[able] by [the State] upon reasonable inquiry" (CPLR 3123[a]). To the contrary, it seems to this Court that most, if not all, of the "factual statements" sought to be admitted lie within the knowledge of the NYPD or the Queens DA, not that of the State or its Attorney General.
While the Benjet Affirmation may be relevant and persuasive, its weight and interpretation must be assessed in the context of the trial, not through procedural shortcuts. Whether that Affirmation satisfies either the documentary evidence requirement under § 8-b(3) or the evidentiary burden under § 8-b(5) is precisely the issue that remains to be resolved by this Court after trial. It strains credulity that claimant's counsel "reasonably believe[d] there can be no substantial dispute at the trial" over these all-encompassing statements which appear both contested and material at the heart of the Claim (CPLR 3123[a]). Indeed, claimant's counsel in his Reply Affirmation critically parses through the State's competing factual recitation. Any attempt to compel admissions under CPLR 3123 to these questions appears improper, as it seeks to shortcut a process that requires full development of the record and fact-finding at trial.
Additionally, the Court notes that claimant's attempt to conflate factual representations made during the criminal vacatur proceeding with the legal standards applicable under Court of [*4]Claims Act § 8-b is procedurally and substantively flawed. The vacatur of a conviction under CPL § 440.10 does not, in and of itself, establish innocence under § 8-b(5); nor does a prosecutor's factual acknowledgment substitute for claimant's burden to prove by clear and convincing evidence that he did not commit any of the acts charged. The Court reminds claimant that the purpose of this proceeding is not to relitigate the criminal matter, but rather to adjudicate a civil claim under § 8-b, following the standards and procedures prescribed therein. Whether the claimant can meet that burden of proving actual innocence is a matter that remains to be fully developed through discovery and resolved by the trier of fact.
To the extent claimant seeks partial summary judgment based solely on the Affirmation submitted in the criminal vacatur proceeding, the request is procedurally improper and premature. "Generally, the movant's failure to include a copy of the pleadings in the papers supporting a motion for summary judgment requires summary denial of the motion" (Encarnacion v State of New York, 203 AD3d 1416, 1417 [3d Dept 2022] [internal quotation marks omitted], quoting Greene v Wood, 6 AD3d 976, 977 [3d Dept 2004]). Here, claimant did not present the motion styled as required under CPLR 3212, nor does it meet the procedural or evidentiary requirements for summary judgment motion practice. His eleventh-hour submission of the pleadings in his Reply does not cure the procedural misstep. 
For the reasons noted above, the Court denies Motion No. M-101983, and any informal request for partial summary judgment.
July 15, 2025
New York, New York
JAVIER E. VARGAS
Judge of the Court of Claims